**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Martin Dwayne HESSLER, Defendant-Appellant.**

**No. 71–1736.**

United States Court of Appeals, Seventh Circuit.

Argued June 1, 1972.

Decided July 26, 1972.

Certiorari Denied Nov. 6, 1972. See 93 S.Ct. 346.

Thomas H. Singer, South Bend, Ind., for defendant-appellant.

William C. Lee, U. S. Atty., and John R. Wilks, Asst. U. S. Atty., Fort Wayne, Ind., Timothy P. McCarthy, Asst. U. S. Atty., South Bend, Ind., for plaintiff-appellee.

Before KNOCH, Senior Circuit Judge, and KILEY and STEVENS, Circuit Judges.

KNOCH, Senior Circuit Judge.

Defendant-appellant, Martin Dwayne Hessler, was tried and convicted in a jury trial on an indictment charging violation of Title 18, U.S.C. § 1201, kidnapping.

Appellant asserts that he was prejudiced because a witness whose name did not appear on a list of seventeen witnesses, previously supplied him, was allowed to testify.

We need not discuss the evidence in detail as its sufficiency is not challenged. The alleged victims were a mother and her four-year-old daughter. The mother testified. She stated that she was driving the vehicle involved and

that she followed the kidnapper's directions out of fear because he held a knife with which he threatened her child. At one point, the automobile became "stuck" and the kidnapper got out to push it. The mother locked the doors to keep him from getting back into the automobile and drove away. At the trial she was asked whether the kidnapper had placed his hands on the exterior of the automobile.

Although his name was not listed in advance as a prospective witness, Police Chief J. Stebbins was allowed to testify, over objection, that he had tested the automobile for fingerprints and was unable to find any identifiable prints, thus neither inculpating nor exculpating the appellant. His testimony added nothing to the prosecution's case to prove the charges but served merely to negative a possible defense argument, which the government feared might otherwise have been raised when cross-examination of the mother elicited the testimony that the kidnapper had placed his hands on the automobile.

The government argues that but for this added witness (notified only on the last actual day of trial, shortly before he took the stand, that he was to be a witness) the defense might have invited the jury to draw inferences adverse to the prosecution from the absence of evidence concerning fingerprints on the vehicle.

In its preliminary stages, the parties in effect treated this case as involving a capital offense, calling for a list of witnesses pursuant to Title 18, U.S.C. § 3432, despite the decision of the Supreme Court in United States v. Jackson, 1968, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138, striking down the death penalty in this statute, and the prosecution's assertion, almost at the outset, that the death penalty would not be sought here. Section 3432 calls for a list of the witnesses to be produced on the trial for proving the indictment. The testimony of Chief Stebbins did not go to prove the indictment. It was offered merely to disprove a possible defense. Cf. Turner v. United States, 5

Cir., 1971, 441 F.2d 736, 739. See also Goldsby v. United States, 1895, 160 U.S. 70, 16 S.Ct. 216, 40 L.Ed. 343, and United States v. Rosenberg, 2 Cir., 1952, 195 F.2d 583, 599, respecting rebuttal witnesses; and Hall v. United States, 4 Cir., 1959, 410 F.2d 653, 660, cert. den. 396 U.S. 970, 90 S.Ct. 455, 24 L.Ed.2d 436 and Loux v. United States, 9 Cir., 1968, 389 F.2d 911, 915, cert. den. 393 U.S. 867, 89 S.Ct. 151, 21 L.Ed.2d 135, where it was understood that a capital sentence was not to be sought.

Appellant contends that the prosecution was alerted prior to the trial that this defense argument might be raised because in a pretrial hearing, the mother was also asked whether the kidnapper's hands touched the automobile. The government's response, which we find persuasive, is that the results of all the scientific tests and experiments were made available to the defense and, as the absence of identifiable prints was known, it was reasonable not to expect this question to be raised again at the trial itself.

Detailed evidence was adduced regarding microscopic comparison of appellant's hair with hairs found in a coat believed to have been discarded by the kidnapper near the site of the victims' escape, with a finding of no discrepancies among the 15 to 25 points of comparison. The expert who testified stated that although it was impossible to conclude that particular hairs came from a particular individual, in thousands of examinations, he had never seen hair known to be from two different persons exhibit exactly the same microscopic characteristics. Under the circumstances it might have been a very telling argument to ask why evidence on the even more reliable aspect of fingerprints had not been produced.

In any event, the element of surprise, the elimination of which is the main function of the advance list of witnesses, was clearly absent here. The results of the tests had been made available to the defense.

■ The mother's in-court identification of the appellant was a vital part of the prosecution's case. There were certain discrepancies in the descriptions originally supplied by the mother and the appearance of the appellant whom she nevertheless firmly identified at the trial. These discrepancies, *e. g.*, the color of appellant's eyes as she saw them through the window of the car when he was trying to get back in after she locked the doors, the presence of markings on his face, his style of hair dress, were all argued to the jury.

However, the appellant contends that it was error to refuse to give certain instructions tendered by him. Appellant's instruction No. 1 reads:

> You are instructed that the defendant, Martin Dwayne Hessler, was required to be in this court during these proceedings, and that any identification made in the courtroom must be viewed in this light.

Appellant explains that this instruction was tendered because the mother admitted that she expected to see the kidnapper in court and turned toward the defense counsel table when she was asked to point him out.

On the theory that the jury might otherwise conclude that identification was a matter of fact, appellant tendered his instruction No. 10, as follows:

> You are instructed that evidence of identification of the defendant in the absence of prior familiarity with him is merely the expression of an opinion by a witness, and it is to be regarded by the Jury in the same light as any other opinion that may be expressed by a witness.

Similarly, appellant states, he tendered his instructions Nos. 13 and 14, on the ground that the jury should be cautioned about human error when identification was an issue. These read respectively:

> You are instructed that the possibility of human error or mistake, and the probable likeness or similarity of objects and persons are elements that you must act upon in considering testimony as to identity. You must consider these factors in passing upon the credibility that you attach to the witness' testimony, and you must be satisfied beyond a reasonable doubt as to the accuracy of the witness' identification of the defendant.

and:

> If you as jurors find that there is a good probability that the witnesses were honestly mistaken in their identification of the defendant, and if you find that there is no other reliable evidence that the defendant committed the crime charged, then a reasonable doubt is created as to the guilt of the defendant.

Insofar as these tendered instructions are not merely argumentative, their content was covered by the instruction which the Court did give, as follows:

> Despite every precaution that may be taken to prevent it, there may be in all matters depending on human testimony for proof, a mere possibility of error.

> \*   \*   \*   \*   \*   \*

> The evidence in this case raises the question of whether the defendant was, in fact, the criminal actor and necessitates your resolving any conflict or uncertainty in testimony on the issue of identification. The burden of proof is on the prosecution with reference to every element of the crime charged, and this burden includes the burden of proving beyond a reasonable doubt the identity of the defendant as the one who committed the crime charged. In considering the testimony of witnesses who have identified the defendant you will determine their credibility and weigh their testimony in the same way as you do other witnesses who have taken the stand and testified. And if after a consideration of all the evidence in the case you have a reasonable doubt that the identity of the perpetrator of the crime charged has not been established, then you must find the defendant not guilty.

The mother was subjected to extensive cross-examination, and, over objection, she was obliged to observe the appellant closely from a distance of less than four feet directly before the jury who were thus able to observe in detail her reactions and demeanor.

As this Court has reiterated frequently (see recent decisions in United States v. Esquer, 459 F.2d 1231, p. 1238, 1972, and United States v. Cool et al., 461 F.2d 521, p. 524, 1972) questions of credibility present issues for determination by the jury. This Court will not substitute its judgment for theirs on those issues.

We are satisfied that no reversible error occurred. The judgment of the District Court is affirmed.

Affirmed.