**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Larry Eugene McCOLLUM,
Defendant-Appellant.**

No. 83–5106.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 4, 1983.

Decided May 8, 1984.

Richard Romero, Los Angeles, Cal., for plaintiff-appellee.

John F. Walter, Walter, Firestone, Richter & Kane, Los Angeles, Cal., for defendant-appellant.

Before FARRIS and REINHARDT, Circuit Judges, and WEIGEL,* District Judge.

WEIGEL, Senior District Judge:

Larry Eugene McCollum was convicted of attempted bank robbery under 18 U.S.C. § 2113(a) after a jury rejected his defense that he was acting under hypnosis. McCollum now appeals from the conviction. He argues that the district court erred by (1) excluding certain videotaped testimony by the defendant; (2) refusing to exclude evidence of the defendant's prior bank robbery conviction; and (3) denying defendant an opportunity to call a second expert witness on surrebuttal. Also, McCollum contends that the prosecution violated his fifth amendment rights by making improper remarks during closing argument. We affirm the conviction.

## I

### BACKGROUND

Appellant McCollum entered the Sunset-Cahuenga branch of Crocker National Bank in Los Angeles, California, at about 1:45 p.m. on May 5, 1982. He approached Steven Durkee, a bank employee, and without comment handed him an envelope. After being questioned twice about the envelope, McCollum said to Durkee, "Open it. I was told to bring it here. I don't know what is in it." Another Crocker employee, George Koch, opened the envelope and discovered a note. The note demanded $100,-000, and stated that the person who had delivered it was under a hypnotic spell. Koch asked McCollum to sit down. McCollum complied, and remained seated while

the bank was evacuated and police officers entered to apprehend him. McCollum failed to respond to the officers' initial questions and commands, but accompanied them to a police car. Later, while seated in the car, McCollum shook violently for a period of ten to fifteen seconds and then asked one of the officers, "What are you doing? Why am I here?"

Afterwards, McCollum claimed to have no recollection of his visit to the Crocker Bank branch. Four sessions with Kurt J. Jorgensen, a forensic hypnotist, "enhanced" McCollum's memory, according to the defense. During one of the hypnosis sessions, McCollum recalled that one John Covall, a prior acquaintance, drugged him and took him to a room where he was met by a woman named Sara. Sara injected McCollum with an unknown substance and placed McCollum under hypnosis. Covall and Sara then drove McCollum to the bank, where Sara asked McCollum to deliver an envelope to "her previous employer" and to "wait for some papers that he would be given as a result of what was in the envelope." According to Jorgensen, McCollum was given a post-hypnotic suggestion that if he were detained or questioned extensively, his mind would go blank, he would be gripped by fear, he would experience falling, and he would forget everything that had happened to him within the past eight hours. Jorgensen's interviews with McCollum were recorded on a videotape.

McCollum was indicted for attempted bank robbery and was first tried before District Judge Terry J. Hatter. The first trial ended in mistrial on October 6, 1982, as did the second, on October 14. The case was then transferred to District Judge William P. Gray.

Prior to the third trial, the defense renewed an *in limine* motion, denied in the earlier trials, to prevent the Government from introducing evidence of McCollum's

---

* Honorable Stanley A. Weigel, Senior District Judge for the Northern District of California, sitting by designation.

1970 armed robbery conviction for impeachment purposes should McCollum testify. The court denied defendant's motion, and McCollum did not take the stand during the trial.

Before the earlier trials, Judge Hatter had ruled that the defense could introduce an edited segment of the videotape of the Jorgensen-McCollum interviews for the purpose of demonstrating the basis for Jorgensen's opinion that McCollum acted under hypnosis. Judge Gray also allowed the defense to present part of the videotape showing Jorgensen purporting to hypnotize the defendant. However, he refused to allow the part of the videotape in which McCollum recited his "enhanced memory" version of events on May 5. McCollum's statements were instead presented to the jury in the form of Jorgensen's own testimony concerning the basis for his opinion.

Jorgensen was the sole expert witness called by the defense during its case-in-chief. The prosecution, in rebuttal, called Dr. Richard Douce, who testified that in his opinion based on study of the videotapes, McCollum was not in fact under hypnosis during his sessions with Jorgensen. In addition, Dr. John Stalberg was called and testified that based on an interview he had conducted with McCollum prior to the sessions with Jorgensen, he had concluded that McCollum was not a good hypnotic subject. Following the close of rebuttal, the defense attempted to call in surrebuttal Dr. James Walker, a second expert, to support Jorgensen's view that McCollum was hypnotized during the interview sessions and that he had acted under hypnosis on May 5. The court ruled that the proffered testimony would be repetitive and therefore improper surrebuttal. The defense was not permitted to call Dr. Walker.

Another prosecution witness was Officer Terrance Johnson of the Los Angeles Police Department. Johnson stated that upon booking McCollum, he routinely checked his arms for needle marks, and did not see any. During cross-examination, Johnson inspected a large tattoo on McCollum's left arm and conceded that it should have been listed as an "observable physical oddity" on the booking form. The tattoo was not so listed. In closing argument, the prosecuting attorney attempted to explain this inconsistency by reminding the jury that no evidence had been introduced to show that McCollum's tattoo was on his arm on May 5, 1982, the day he was booked. The prosecutor also pointed to a number of inconsistencies in the defense explanation of McCollum's conduct, repeatedly referring to that explanation as a "story." The defense objected to the use of the term "story," claiming that it was an improper comment on the defendant's decision not to testify.

The jury in this third trial returned a verdict of guilty. McCollum now appeals from the conviction. He raises several challenges to the proceedings below.

## II

### A. *Exclusion of McCollum's Videotape Testimony*

The first claim on appeal is that the trial court erred by refusing to allow presentation of the videotape segments in which McCollum, purportedly under hypnosis, narrated his version of events on May 5. McCollum's recorded out-of-court statements would have been inadmissible hearsay if offered to prove the truth of the events narrated. Fed.R.Evid. 801(c); Fed. R.Evid. 802; Fed.R.Evid. 803.

■ McCollum contends that his taped statements should have been admitted because they showed the basis for an expert's opinion that he was under hypnosis when he entered the bank. This circuit has held that an expert witness may be permitted to state an opinion based on otherwise inadmissible hearsay when the source of information is "of a type reasonably relied upon by similar experts in arriving at sound opinions on the subject." *United States v. Sims*, 514 F.2d 147, 149 (9th Cir.), *cert. denied*, 423 U.S. 845, 96 S.Ct. 83, 46 L.Ed.2d 66 (1975); *see* Fed.R.Evid. 703. Where the nature of out-of-court statements made by the defendant form the basis for an expert's opinion concerning the

defendant's mental state, the expert may be permitted to recite the out-of-court statements. *See, e.g., United States v. Hearst*, 563 F.2d 1331, 1348–49 (9th Cir. 1977), *cert. denied*, 435 U.S. 1000, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978).

■ However, the trial court did not err by excluding McCollum's videotaped recitation. The defense expert witness was allowed to relate the statements made by McCollum during the hypnosis sessions. In this circumstance, the court possessed broad discretion to exclude the videotape, which was merely cumulative evidence of the basis for the expert's opinion. *Id.* at 1349. The attempt to introduce the tape essentially amounted to an effort to put the defendant's testimony directly before the jury without subjecting him to the cross-examination and impeachment that would have followed had he taken the witness stand. Excluding this taped testimony was well within the court's discretion.

B. *Allowing Evidence of Prior Robbery Conviction*

Appellant challenges the trial court's *in limine* ruling that evidence of McCollum's 1970 armed robbery conviction would be admitted should he testify. Under Fed.R. Evid. 609(a)(1), the conviction could be admitted to impeach McCollum's credibility as a witness only if the trial court determined that the probative value of admitting the conviction for that purpose outweighed its prejudicial effect to the defendant.[1]

Appellant contends that the trial court erred by ruling the conviction admissible under this rule without making a specific finding that the probative value of the conviction with respect to McCollum's truthfulness outweighed the prejudicial effect of admission on the defense.[2] Whether express articulation of such a finding is required in this circuit is unclear. *Compare United States v. Cook*, 608 F.2d 1175, 1187 (9th Cir.1979) (en banc) (admission of prior conviction under Rule 609(a)(1) upheld although balancing was "inarticulate" because "appropriate reasons could have been given" for decision to admit), *cert. denied*, 444 U.S. 1034, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980), *with United States v. Hendershot*, 614 F.2d 648, 653 (9th Cir. 1980) (admission held erroneous because record left open the possibility that trial court *might* have applied an incorrect legal standard) and *United States v. Mehrmanesh*, 689 F.2d 822, 834 (9th Cir.1982) (following *Hendershot* and *Cook* dissent). Appellant's position may, therefore, be correct. Moreover, it is questionable whether the prior conviction was sufficiently probative of McCollum's truthfulness to warrant

---

1. Although the conviction at issue was more than ten years old, the standard of Fed.R.Evid. 609(a), not 609(b), governs its admissibility for impeachment purposes because McCollum was not released from custody until 1976. *See* Fed. R.Evid. 609(b).

2. The court's principal comments concerning its reasons for allowing the conviction occurred in the following colloquy:

 THE COURT: The rule is, I think, [the conviction is] inadmissible if the conviction was over 10 years ago, or the release from prison was over 10 years ago, whichever was the latest, unless the Court finds the value, the evidentiary value, overcomes the prejudice.

 . . . . .

 I think I am going to allow it. I am going to caution the jury, however, that I would allow it for the limited purpose, not of allowing the jury to infer that if he was willing to make a robbery once, he is more likely to be willing to do it again, of course.

 On the other hand, there is a question as to—the jury might conclude, 'Oh, yes, he must have been under hypnosis to do a thing that is totally out of character with his prior conduct.' If his prior conduct includes a robbery, then that is relevant for the jury to consider, the possibility of his—the need for him to be under hypnosis in order to do such a thing.

 I think it has relevance here.

 From this discussion, it appears that the trial judge focused on the general "evidentiary value" of McCollum's prior conviction, rather than on its impact on McCollum's credibility. This latter type of value respecting credibility is the only form of relevancy a judge should consider in striking a balance under Rule 609(a)(1). Consequently the record does not show that the trial judge made a determination based on considerations appropriate under Rule 609(a)(1). As discussed below, however, the considerations would have been appropriate under Rule 404(b).

admission pursuant to Rule 609(a)(1) even if articulation of the court's reasoning is not required. *Cf. United States v. Lipps,* 659 F.2d 960, 962 (9th Cir.1981) (per curiam).

■ However, we need not decide whether McCollum's prior conviction was properly ruled admissible under Rule 609. Under the circumstances, evidence of the conviction could have been admitted pursuant to Fed.R.Evid. 404(b) for the purpose of showing McCollum's intent. Any error in ruling the conviction admissible under Rule 609 was therefore harmless. *See United States v. Mehrmanesh,* 689 F.2d at 831 n. 10.

■ Evidence of a criminal act by the defendant other than the charged offense is admissible under Rule 404(b) for the purpose of showing intent if the evidence has probative value concerning the defendant's intent that is not outweighed by unfair prejudice to the defendant resulting from the introduction of that evidence. *See United States v. Sigal,* 572 F.2d 1320, 1323 (9th Cir.1978). Such a prior act can be probative of intent because the fact that the defendant had an unlawful intent at the time he committed the extrinsic offense makes it less likely that he had a lawful intent when he performed the acts charged as the present offense. *United States v. Beechum,* 582 F.2d 898, 911 (5th Cir.1978) (en banc), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979); *see United States v. Rocha,* 553 F.2d 615, 616 (9th Cir.1977); *United States v. Dothard,* 666 F.2d 498, 502 (11th Cir.1982). A past crime is not relevant to intent unless it required the same form of intent that the Government seeks to prove in the second case. *See United States v. Bramble,* 641 F.2d

681, 682–83 (9th Cir.1981) (prior conviction for possession of marijuana not relevant to intent in subsequent prosecution for possession with intent to distribute cocaine), *cert. denied,* 459 U.S. 1072, 103 S.Ct. 493, 74 L.Ed.2d 635 (1982); *United States v. Partyka,* 544 F.2d 345, 347 (8th Cir.1976). In this case, however, McCollum's prior conviction was for armed robbery, an offense requiring the same intent as the attempted robbery here charged. Evidence of this armed robbery conviction was probative as to McCollum's proffered defense that he acted under hypnosis without any intent to rob the bank.[3] *See Sigal,* 572 F.2d at 1323.

■ In many instances where a prior criminal act has some relevance to the question of intent, evidence concerning the act must nevertheless be excluded because the probative value is substantially outweighed by unfair prejudice to the defendant resulting from the fact that the evidence tends to portray the defendant as a "bad" man and thus hinders his defense on other issues.[4] *See* Fed.R.Evid. 403. Thus, for example, when there exists a genuinely disputed question concerning the identity of the person who committed the acts charged, evidence of other criminal acts of the defendant can not be introduced. *E.g., United States v. Powell,* 587 F.2d 443, 448 (9th Cir.1978); *United States v. Coades,* 549 F.2d 1303, 1306 (9th Cir.1977); *United States v. Silva,* 580 F.2d 144, 148 (5th Cir.1978); *but cf. United States v. Franklin,* 704 F.2d 1183, 1188 & n. 3 (10th Cir. 1983) (declining to follow *Powell*). Also, such evidence cannot be introduced to show intent if there is a substantial dispute concerning whether the event charged as a

---

**3.** That the prior conviction was 12 years old does not completely negate its probative value. The trial judge was plainly aware of the age of the conviction when he determined the conviction relevant to the believability of McCollum's hypnosis defense. *See supra* note 2. No authority supports the proposition that a bad act loses all probative value after a given period of time. *See United States v. Franklin,* 704 F.2d 1183, 1189 (10th Cir.1983).

**4.** To minimize this prejudicial impact, a court that admits evidence pursuant to Rule 404(b) is. required to give a limiting instruction. *See* *United States v. Smith,* 685 F.2d 1293, 1296 (9th Cir.1982); *United States v. Sigal,* 572 F.2d 1320, 1323 (9th Cir.1978). Since the evidence of McCollum's prior conviction was not in fact admitted, no issue pertaining to a limiting instruction arises in this case.

crime occurred at all. *E.g., United States v. O'Connor,* 580 F.2d 38, 41 (2d Cir.1978).

In this case, however, the defense conceded that McCollum performed all acts charged by the prosecution. The key issue, indeed the only disputed issue, was whether McCollum acted with intent to rob the bank. Where the mental state to be inferred from undisputed overt acts of a defendant is the crucial issue, evidence of past criminal acts has generally been found insufficiently prejudicial to warrant exclusion. *See, e.g., Mehrmanesh,* 689 F.2d at 832–33; *Sigal,* 572 F.2d at 1323; *United States v. Rocha,* 553 F.2d 615, 616 (9th Cir.1977); *United States v. Brunson,* 657 F.2d 110, 115 (7th Cir.1981) (noting that intent was appellant's "chosen defense", *cert. denied,* 454 U.S. 1151, 102 S.Ct. 1019, 71 L.Ed.2d 306 (1982); *United States v. Dudley,* 562 F.2d 965, 966 (5th Cir.1977).[5] We reach a similar conclusion here.

A district court, in the only reported case dealing with a similar fact situation, admitted evidence of a prior act under Rule 404(b). In *United States v. Phillips,* 515 F.Supp. 758 (E.D.Ky.1981), the defendant admitted that she had shot and almost killed two United States Marshals in an attempt to effect the escape of her husband as he was brought into a federal courthouse. *Id.* at 759. At trial, the defendant's husband testified that he had gained total control of his wife's mind by hypnotizing her repeatedly over a period of years. He said she shot the Marshals under the influence of this hypnotic compulsion.[6] *Id.* at 760. As in this case, the principal defense contention was that the defendant lacked the requisite criminal mental state due to the effects of hypnosis. *Id.* at 761.

To rebut this defense, the prosecution sought to introduce evidence that the defendant had fired a gun similar to that used in the shootings at a neighbor during a dispute that occurred some weeks prior to the escape attempt. The court found this evidence relevant because "it tended to show she was capable of forming the intent to commit this violent act at a time when she was not under her husband's influence." *Id.* at 764. The court further ruled that the prejudice did not outweigh the probative value of this evidence, and that the evidence would be admitted to rebut the defense attempt "to picture the defendant as an immature young woman, who would have been incapable of committing a violent act but for the insidious influence of her husband." *Id.* at 765.

The district court in this case made a similar ruling when it stated that, at least if McCollum testified, the prior armed robbery conviction would assist the jury in considering "the need for [McCollum] to be under hypnosis in order to do such a thing." *See supra* note 2. It is true that the court never mentioned Rule 404(b), nor did it articulate the standard set forth in that rule. Also, the prior crime involved in this case was separated by a much longer period of time from the purportedly hypnosis-induced act than was the extrinsic incident in *Phillips.* However, from the record it appears that the court considered the age of the conviction, the probative value of the conviction with respect to McCollum's intent, and the prejudice to the defendant resulting from its admission. No "mechanical recitation" of the Rule 403 balancing process is required. *United States v. Green,* 648 F.2d 587, 592–93 (9th

---

**5.** One apparent exception is *United States v. Bettencourt,* 614 F.2d 214 (9th Cir.1980). In that case, however, the court noted that due to the nature of the charged offense (interference with a federal officer in performance of official duties), the probative value of similar acts with respect to the defendant's specific intent on the particular occasion charged was "minimal." *Id.* at 217. The court stated that the offense was one in which intent was likely to arise "spontaneously," and that unlike the "nonspontaneous intent" needed to prove other offenses, the exist-

ence of spontaneous intent on one occasion has very little value for establishing such spontaneous intent on another occasion. *Id.* & n. 6. The court ruled that the prejudice to the defendant outweighed this minimal relevance.

**6.** Alternatively, the defense contended that the hypnosis sessions had deprived the defendant of her capacity to distinguish right from wrong, and that she was legally insane at the time of the shooting.

Cir.1981); *United States v. Sangrey*, 586 F.2d 1312, 1315 (9th Cir.1978). The court's ruling that evidence of the conviction could be admitted is sustained.[7]

### C. *Refusal to Allow Proffered Expert on Surrebuttal*

McCollum next contends that the district court erred by refusing to allow him to call Dr. Walker as a second expert witness on surrebuttal after the prosecution called two experts in rebuttal. He argues that his case was prejudiced because the credentials of the second prosecution expert far exceeded those of Jorgensen, the defendant's expert.

 A trial court has broad discretion to admit or exclude rebuttal or surrebuttal evidence. *See United States v. Batts*, 573 F.2d 599, 603 (9th Cir.), *cert. denied*, 439 U.S. 859, 99 S.Ct. 178, 58 L.Ed.2d 168 (1978); *United States v. Sadler*, 488 F.2d 434, 435 (5th Cir.), *cert. denied*, 417 U.S. 931, 94 S.Ct. 2642, 41 L.Ed.2d 234 (1974). The trial court acted within its discretion by excluding Dr. Walker's testimony, particularly because the subject of that testimony was the same as that of Jorgensen's and the testimony would have been cumulative. *See United States v. Clark*, 617 F.2d 180, 187 (9th Cir.1980). The trial judge did not allow the prosecution to present testimony by different experts on the same subject.[8] He did not restrict each side to one expert witness. Nor did he state that the prosecution would be allowed only one expert rebuttal witness if the defense voluntarily limited itself to one expert. By resting its case after calling only Jorgensen, the defense bypassed any opportunity to incorporate Dr. Walk-

er's testimony in its case-in-chief. The trial court did not err by excluding the testimony when offered as surrebuttal.

### D. *Prosecutor's Statements in Closing Argument*

Finally, McCollum complains that the prosecutor's repeated references to the defense version of events as a "story," and his comment concerning the omission of McCollum's arm tattoo from the booking report, constituted misconduct requiring reversal.

 The standard for determining whether statements made by a prosecutor concerning the defense version of events amount to misconduct is whether "the jury would naturally and necessarily take them to be comments on the failure of the accused to testify." *United States v. Pimentel*, 654 F.2d 538, 543 (9th Cir.1981); *United States v. Cornfeld*, 563 F.2d 967, 971 (9th Cir.), *cert. denied*, 435 U.S. 922, 98 S.Ct. 1484, 55 L.Ed.2d 515 (1977). The prosecutor's comments in this case did not have this effect. Read in context, they amount only to an attempt to persuade the jury that McCollum's purported hypnosis was contrived in advance to serve as a basis for defense in the event his alleged bank robbery attempt failed. This attempt to explain McCollum's apparent state of detachment was entirely appropriate. *See Cornfeld*, 563 F.2d at 971.

 Likewise, the prosecutor's reference to the absence of evidence that the tattoo was on McCollum's arm on May 5 does not require reversal. The comment accurately stated that no evidence directly supported the defense suggestion that Offi-

---

**7.** For other cases in which the admission of evidence of prior crimes under Rule 404(b) to establish a defendant's intent to commit bank robbery has been upheld, *see, e.g., United States v. Kibler*, 667 F.2d 452, 455 (4th Cir.), *cert. denied*, 456 U.S. 961, 102 S.Ct. 2037, 72 L.Ed.2d 485 (1978); *United States v. Williams*, 577 F.2d 188, 191 (2d Cir.), *cert. denied*, 439 U.S. 868, 99 S.Ct. 196, 58 L.Ed.2d 179 (1978).

**8.** The subject of the testimony by Dr. Douce was whether McCollum was actually under hypnosis

during the sessions with Jorgensen in which he purported to narrate events of May 5. Dr. Stalberg, the second Government expert witness, addressed only the question of McCollum's susceptibility to hypnosis, based on a separate interview. Dr. Walker's testimony, by contrast, was offered by defendant only to "support[ ] Mr. Jorgensen's opinion that Mr. McCollum was in a hypnotic state on May 5, 1982 and that he was hypnotized during each of the sessions with Mr. Jorgenson." Appellant's Opening Brief at 34.

cer Johnson failed to see the tattoo on McCollum's arm and therefore could not have noticed needle marks resulting from an injection. The defense raised no objection when the comment was made. The trial court's failure to strike the argument sua sponte is certainly not plain error. *See Pimentel,* 654 F.2d at 543–44.

## III

## CONCLUSION

The judgment of the district court is AFFIRMED.

REINHARDT, Circuit Judge, dissenting:

I disagree both with the district court's action in admitting the prior conviction under Federal Rule of Evidence 609 and with the majority's holding that because the trial court could have admitted the conviction under Rule 404 the error was harmless. I therefore dissent.

The record, cited in the majority opinion, strongly suggests that the trial court failed to perform the balancing test prescribed by Federal Rule of Evidence 609.[1] That rule commits to the sound discretion of the trial court the task of weighing the probative value of the prior conviction with respect to the witness' truthfulness against the prejudicial effect of admission on the defense. In *United States v. Hendershot,* 614 F.2d 648, 653 (9th Cir.1980) we held that the possibility that the district court failed to perform the balancing test when adjudicating the admissibility of a prior conviction under Rule 609 constituted reversible error. *See also, United States v. Mehrmanesh,* 689 F.2d 822, 834 (9th Cir.1982).

In any event, the district court failed to articulate the reason for its decision to admit the prior conviction under Rule 609. As the majority points out, it is not entirely clear from our prior decisions that we *require* the district court to articulate the reasons underlying a Rule 609 decision. *Compare United States v. Cook,* 608 F.2d 1175, 1187 (9th Cir.1979), *cert. denied,* 444 U.S. 1034, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980), *with United States v. Hendershot,* 614 F.2d 648, 653 (9th Cir.1980), *and United States v. Mehrmanesh,* 689 F.2d 822, 834 (9th Cir.1982). However, upon considering the necessity for protecting the integrity of the procedures used to determine the admissibility of a prior conviction and the importance of preserving a record of those procedures so that the reviewing court may properly perform its task, I believe that the reasoning of our later cases is persuasive and controlling. District courts are, or should be, required to articulate the bases of their finding regarding the potential probative or prejudicial impact of admitting a witness' prior conviction into evidence under Rule 609. *United States v. Hendershot,* 614 F.2d 648, 653 (9th Cir. 1980); *United States v. Mehrmanesh,* 689 F.2d 822, 834 (9th Cir.1982); *accord, United States v. Crawford,* 613 F.2d 1045, 1050 (D.C.Cir.1979); *see also United States v. Hall,* 588 F.2d 613, 615 (8th Cir.1978). Therefore, rather than leaving the law in the state of confusion in which the majority finds it, I would expressly hold that the district court was in error in admitting McCollum's 1970 conviction into evidence under Federal Rule of Evidence 609 both because it failed to perform the appropriate balancing test *and* because it failed to articulate the basis for its decision.[2]

I also disagree with the majority's contention that any error committed by the trial court in admitting McCollum's prior conviction under Rule 609(a)(1) was harmless. The majority bases this contention on the theory that the trial court *could have*

1. See majority opinion n. 2, first paragraph. McCollum was released from confinement on the prior offense six years before the trial. Accordingly, the test required by 609(a)(1) rather than the stricter 609(b) standard was applicable to the requisite Rule 609 inquiry.

2. We apply the abuse of discretion standard in reviewing a district court's determination under Rule 609(a)(1) of the admissibility of a prior conviction in light of its prejudicial/probative impact. *See United States v. Field,* 625 F.2d 862, 871 (9th Cir.1980). However, that standard does not apply when the court does not make the necessary inquiry into the relevant Rule 609(a)(1) considerations and fails to perform the balancing test. *United States v. Mehrmanesh,* 689 F.2d 822, 834 (9th Cir.1982); *see also United States v. Hendershot,* 614 F.2d 648, 653 (9th Cir.1982).

admitted the prior conviction under Federal Rule of Evidence 404(b) for the purpose of demonstrating McCollum's intent to commit bank robbery. The majority relies on *United States v. Mehrmanesh*, 689 F.2d at 831 n. 10 to support this proposition. In *Mehrmanesh*, however, we held that the district court's erroneous admission of a prior conviction under 609(a)(1) was harmless error because the district court *actually had* admitted the prior conviction under Rule 404(b), not because it *could have* done so. Here the majority itself performs the balancing test that Rule 403 requires the district court to perform, and does so without affording the parties an opportunity to litigate the issue and without the benefit of an appropriate judgment, or analysis of the issues, by the district court. Instead the majority simply assumes that the district court would have drawn the same conclusions the majority draws had the district court itself considered and utilized Rules 403 and 404. I believe there is neither precedent nor justification for the majority's *post hoc* application of a Rule 403 test when the district court fails to act under that Rule. There is accordingly neither precedent nor justification for the majority's conclusion that the district court's error in admitting the evidence under Rule 609(a)(1) was a harmless one.

The majority's position not only fails to accord sufficient importance to the procedures required to adjudicate the admissibility of a prior conviction, but seems inconsistent with its own general view regarding the necessity for district courts to perform balancing tests. In its opinion, the majority properly assumes that the trial court is required to perform the balancing test under Rule 609. It simultaneously asserts, however, that because the trial court mentioned some of the factors relevant to a Rule 403 balancing test in the course of the proceedings, the proceedings can be "construed" as encompassing the performance by the district court of a balancing test to determine the admissibility of the prior conviction under Rule 403 and Rule 404(b). This assertion is made in the face of the fact that the trial court never once considered Rule 403 or Rule 404(b)—a fact

readily acknowledged in the majority opinion.

I also disagree with the manner in which the majority balances or fails to balance the prejudicial and probative effects of McCollum's prior conviction. The majority asserts that because intent is the "key" issue, the evidence of McCollum's prior conviction is "insufficiently prejudicial to warrant exclusion." To me, this is a *non sequitur*. Rule 404 provides that evidence of prior convictions, even where indisputably relevant, "may ... be admissible," if, after weighing its probative value against the preclusive effects listed in Rule 403, the trial court deems it desirable to so admit it. *See*, Fed.R.Evid. 404 advisory committee note. The importance of a careful balancing by the district court is emphasized by major commentators on this rule. *See* 22 C. Wright & K. Graham, *Federal Practice & Procedure* § 5250 (1978); 2 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 404[18] (1982). Moreover, where the proffered prior conviction is introduced solely to establish intent to commit a criminal act, the balancing process has been deemed especially critical. *United States v. Beechum*, 582 F.2d 898, 914 (5th Cir. 1978), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979); Note, *Other Crimes Evidence at Trial: Of Balancing and Other Matters*, 70 Yale L.J. 763, 771–73 (1961). Thus, contrary to the majority's view, the fact that intent is the "crucial" issue does not obviate the need to engage in specific, careful balancing, including a weighing of the particular facts; it enhances it. Here the majority never fully considers the prejudicial implications of admitting McCollum's prior conviction in a jury trial, or whether, given the incremental probative value of this fact at trial, it was necessary or appropriate to admit that evidence. *See United States v. Bailleaux*, 685 F.2d 1105, 1112 (9th Cir.1982) (trial court should consider need for prior conviction as evidence in light of other available evidence and issues at hand); 2 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 404[18] at 404–101 to 102 ("Some commentators and courts have suggested that, in assessing the probative value of the evi-

dence, the courts should apply a 'necessity' test to exclude evidence when the prosecution's other evidence on the issue is sufficient beyond a reasonable doubt." (footnotes omitted)); Fed.R.Evid. 403 advisory committee note ("In reaching a decision whether to exclude on grounds of unfair prejudice ... [t]he availability of other means of proof may also be an appropriate factor."); Note, 70 Yale L.J. at 772.

Moreover, balancing the prejudicial and probative effects of McCollum's 1970 conviction in light of the facts before us, I draw a conclusion that is opposite to the majority's. I believe that to admit McCollum's 1970 conviction would have been substantially more prejudicial than probative of his intent to commit bank robbery. First, I find the fact that the earlier wrongful act was more than 12 years old would in any event greatly diminish its probative value. More significant, I have considerable doubt about the degree to which it is probative at all under the facts of this case. To the extent that McCollum's prior conviction has probative value, I agree with the majority that it is with regard to the issue of intent. In the ordinary case, where intent is at issue, the fact that a defendant previously engaged in similar acts and harbored an actual specific intent on those occasions, may have some probative value with respect to the prosecution's contention that the defendant intended to commit the subsequent similar or identical offense and may tend to controvert the defense theory that he did not have such an intent. But under the peculiar circumstances of this case, the fact of McCollum's intent on the earlier occasion is probative of both the prosecution's and defense's theories. The prosecution sought to have the fact of McCollum's prior conviction admitted for the purpose of contradicting his hypnotism defense. However, since the prosecution's expert witness testified that one can only be commanded by a post-hypnotic suggestion to engage in acts which are consistent with one's predisposition, the fact of McCollum's previous armed robbery conviction just as readily corroborates the defense's theory of this crime. Thus, the probative value of admitting the fact of the

prior crime seems to me to be considerably less than in other cases. At the same time, I have no doubt whatsoever that introducing evidence of McCollum's prior bank robbery conviction would significantly bias any jury's view of McCollum's credibility were he to testify on his own behalf and would, as the majority acknowledges, leave the jury with the impression that he was a "bad" man.

Rule 404(b) is intended to be a very limited exception to the longstanding common law tradition that protects a criminal defendant from guilt by reputation. A proper balancing of the probative value of a prior conviction against its prejudicial effects at trial is essential if this exception is to retain the limited character that Congress intended. Because I find the majority opinion to be at odds with that tradition, I respectfully dissent.